IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**KENNETH HOFFMAN, et al.,**

      **Plaintiffs,**

v.

**POULSEN PIZZA LLC, et al.,**

      **Defendants.**

**Case No. 15-2640-DDC-KGG**

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Kenneth Hoffman's Renewed Motion to Approve Collective Action Settlement (Doc. 71) and plaintiff's Amended Application for Fees and Costs (Doc. 72). For reasons explained below, the court grants both motions.

### I.   Factual Background

Plaintiff Kenneth Hoffman, on behalf of himself and others similarly situated, filed this lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Doc. 24. Plaintiff alleges that defendants (who operate some 33 Domino's franchise restaurants) use a flawed method to reimburse pizza delivery drivers for the "reasonably approximate costs" of using their personal vehicles for business purposes. *Id.* ¶ 1. Plaintiff asserts that this flawed method causes delivery drivers to incur unreimbursed expenses and reduces their wages below the federal minimum wage during some or all workweeks. Plaintiff seeks to recover unpaid minimum wages under the FLSA that defendants allegedly owe plaintiff and similarly situated delivery drivers who have worked at defendants' Domino's restaurants.

On June 9, 2015, the parties filed a Joint Motion to Approve Stipulated Form of Notice of Collective Action (Doc. 19). In it, the parties reported that they had agreed on an proposed order

conditionally certifying the case as an FLSA collective action. *Id.* at 2. They also asked the court to approve a Notice of Collective Action and order the parties to send the Notice to a putative class consisting of all current and former delivery drivers employed by defendants since they purchased their Domino's restaurants to the present. *Id.*

On June 17, 2015, the court granted the parties' Joint Motion. Doc. 21. The court conditionally certified the putative class and approved all stipulations contained in the parties' joint motion,[1] including the agreed-upon Notice of Collective Action. *Id.* at 3. The court ordered plaintiff to mail the Notice of Collective Action to the putative class members within 14 days after defendants produced a class member list. *Id.* Plaintiff's counsel asserts that he has mailed the court-approved Notice to all putative class members. Doc. 71-2 ¶ 2. In response, 137 individuals, including the named plaintiff, opted to join the class. Doc. 71 at 4.

On November 10, 2015, the parties advised the court that they had reached a settlement and were finalizing a settlement agreement. *See* Doc. 66. The parties eventually signed a "Confidential Settlement and Release Agreement." Doc. 67-1. Plaintiff's counsel asserts that he has notified the 137 opt-in plaintiffs of the settlement by sending them a letter. Doc. 67-3 ¶ 5. Plaintiff's counsel also reports that this letter informed putative class members about the settlement's terms, including class members' respective estimated awards, and described the formula used to calculate those awards. He also represents that the letter provided putative class members an opportunity to review the settlement agreement and acquire more information about the proposed distribution formula and all other terms of the settlement agreement. *Id.* Plaintiff's counsel also asserts that the letter explained the putative class members' right to object to the

---

[1] One of the parties' stipulations provided that plaintiff would file an Amended Complaint omitting its theory of successor liability. Doc. 19 at 3. The court approved this stipulation and ordered plaintiff to file his Amended Complaint within 7 days. Doc. 21. Plaintiff filed his Amended Complaint on June 24, 2015. Doc. 24. Dropping the successor liability claim was the only change made by plaintiff's Amended Complaint. It did not moot or otherwise affect the court's conditional class certification.

settlement. *Id.* Plaintiff's counsel reports that no putative class member has objected to the proposed settlement. *Id.*

On December 18, 2015, plaintiff filed an Unopposed Motion to Approve Collective Action Settlement (Doc. 67) and Application for Fees and Costs (Doc. 68). Plaintiff asked the court to approve the "Confidential Settlement and Release Agreement" (Doc. 67-1) and award plaintiff's counsel their attorney's fees and costs. The court denied those motions without prejudice. Doc. 69. The court explained that it could not approve the settlement for three reasons: (1) plaintiff had not sought final collective action certification; (2) the settlement agreement was not fair and reasonable because it included a confidentiality provision; and (3) the court could not approve the proposed service award because plaintiff had not submitted information sufficient for the court to assess the award's reasonableness. The court also denied plaintiff's request for attorney's fees and costs. It concluded that the request was premature because the court could not approve the settlement agreement.

Plaintiff now submits a Renewed Motion to Approve Collective Action Settlement (Doc. 71). Plaintiff asserts that it has corrected the deficiencies that prevented the court from approving the settlement in its previous Order. Plaintiff's motion attaches an Amended Settlement and Release Agreement ("the Amended Agreement"). Doc. 71-1. As contemplated by the parties' original Confidential Settlement and Release Agreement, doc. 67-1, the Amended Agreement creates a common fund of $132,000. Doc. 71-1 at 2. The parties have agreed to allocate the $132,000 common fund as follows:

    1.    $2,000 service award to the named plaintiff;

    2.    $44,000 (representing one-third of the common fund) to plaintiff's counsel as payment for all attorney's fees, costs, and expenses;

> 3. An amount not to exceed $3,000 to plaintiff's counsel for out-of-pocket costs incurred in the litigation; and
>
> 4. The amount remaining (after the deductions recited above) to the 137 collective action members distributed on a *pro rata* basis using an equitable formula based on the number of delivery miles driven by each opt-in plaintiff.

*Id.* at 2–3.

The Amended Agreement provides that the opt-in plaintiffs will release defendants from all claims asserted in this lawsuit or that reasonably could have arisen out of the same operative facts alleged in this lawsuit, including all claims under the FLSA or state laws governing wage, minimum payment, or overtime. *Id.* at 4. The Amended Agreement requires plaintiff's counsel to include the release language in the envelope containing the settlement check to each opt-in plaintiff along with an explanation that each opt-in plaintiff is bound by the terms of the Amended Agreement. The Amended Agreement also requires defendants to print the release language on the back of the checks. Finally, the Amended Agreement omits the confidentiality provisions that the original settlement agreement contained.

Plaintiff asks the court to approve the Amended Agreement and the award of attorney's fees and costs contained in the Amended Agreement. After reviewing plaintiff's revised submissions, the court approves the parties' settlement agreement and the proposed attorney's fees and costs award. The court explains why below.

## II. Legal Standard

The parties to an FLSA action must present a settlement of those claims to the court for approval. *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D.

4

Kan. Aug. 18, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 162403, at *2 (D. Kan. Jan. 19, 2012) (citing *Lynn's Food Stores*, 679 F.2d at 1354).

### III. Analysis

Plaintiff has filed a Renewed Motion to Approve Collective Action Settlement and an Amended Application for Fees and Costs. In his two Motions, plaintiff asks the court to certify a final collective action, approve the settlement as fair and reasonable, and award the proposed attorney's fees and costs in an amount equal to one-third of the settlement plus recovery of out-of-pocket expenses. The court addresses these requests, in turn, below.

#### A. Final Collective Action Certification

Before the court can approve the parties' FLSA collective action settlement, it must make a final class certification ruling. *Barbosa*, 2015 WL 4920292, at *3; *see also Gambrell*, 2012 WL 162403, at *2. The FLSA allows an employee to bring a collective action on behalf of other employees who are "similarly situated." 29 U.S.C. § 216(b). To determine whether putative collective action plaintiffs are "similarly situated" for purposes of final collective action certification, the court considers several factors. They include the following *Theissen* factors: "(1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant[s] which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL

5306273, at *3 (D. Kan. Oct. 29, 2012) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001)).

Plaintiff asks the court to certify a final collective action of plaintiffs who worked as pizza delivery drivers for defendants' Domino's restaurants. The court considers whether final certification of this class is appropriate under the three *Thiessen* factors.

For the first factor, plaintiff asserts that these employees are similarly situated because: (1) their job duties included delivering pizza and other food items to defendants' customers; (2) they used automobiles not owned by defendants to make their deliveries; (3) defendants required these employees to use safe, legally operable, and insured vehicles when making deliveries; (4) these employees incurred costs while making deliveries; and (5) defendants reimbursed these employees for use of their vehicles at a rate effectively below the IRS "safe harbor" rate. These facts demonstrate that the disparate factual and employment settings of individual class members are similar. The first factor thus favors final collective action certification.

Plaintiff's Motion neglects to provide any information to support the second and third *Thiessen* factors. But, the court can conclude from the record that both factors favor final collective action certification. For the second factor, the court is unaware of any individual defenses that exist for any particular class member. Indeed, plaintiff asserts that all the employees in the putative collective action "are victims of a uniform and employer-based compensation policy" that violates the FLSA. Doc. 24 ¶ 53. Defendants deny this allegation for all putative collective action members. Doc. 26 ¶ 53. And, defendants have not asserted any defenses against any individual employee in the case. So, if defendants prevailed on their argument that the compensation policy does not violate the FLSA, the claims of all employees in

6

the collective action would fail because this argument applies equally to all employees, not merely individual employees. The second factor favors final collective action certification.

Finally, the third factor—fairness and procedural considerations—favors final collective action certification. Allowing plaintiffs to pool their resources for litigation promotes fairness and procedural considerations and thus favors collective action treatment. *See Barbosa*, 2015 WL 4920292, at \*5 (citing *Fulton v. TLC Lawn Care, Inc.*, No. 10-2645-KHV, 2012 WL 1788140, at \*3 (D. Kan. May 17, 2012)). Also, the policy encouraging settlement of litigation favors final collective action certification. *Gambrell*, 2012 WL 5306273, at \*4 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

After considering the *Thiessen* factors, the court concludes that final collective action certification is appropriate here. The court thus certifies a final collective action consisting of employees who worked as pizza delivery drivers for defendants' Domino's restaurants since defendants purchased their stores to the present.

### B. FLSA Collective Action Proposed Settlement

Plaintiff next asks the court to approve the Amended Agreement (Doc. 71-1). When parties settle FLSA claims, they must present the settlement to the court to review and decide whether the settlement it memorializes is fair and reasonable. *Tommey v. Computer Scis. Corp.*, No. 11-CV-02214-EFM, 2015 WL 1623025, at \*1 (D. Kan. Apr. 13, 2015); *see also Gambrell*, 2012 WL 5306273, at \*2 ("When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable."). To approve an FLSA settlement, the court must determine whether: (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed

settlement contains an award of reasonable attorney's fees. *Barbosa*, 2015 WL 4920292, at *5 (citing *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)). The court addresses each consideration, below.

### 1. Bona Fide Dispute

Before approving an FLSA settlement, the parties must submit sufficient information for the court to conclude that a bona fide dispute exists. *McCaffrey*, 2011 WL 32436, at *4 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). To satisfy this obligation, the parties must provide the court with: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and, (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

Plaintiff asserts that a bona fide dispute exists because the parties genuinely disagree whether defendants properly paid their pizza delivery drivers minimum wage after subtracting un-reimbursed vehicle expenses. Plaintiff asserts that defendants did not pay their delivery drivers minimum wage in violation of the FLSA. Defendants deny that they violated the FLSA because, they contend, their reimbursement policy reasonably approximated their delivery drivers' vehicle expenses. Defendants also contend that they always have paid their delivery drivers at least minimum wage. The court concludes that the claims in this case present a bona fide dispute whether defendants violated the FLSA, with the potential for either side to prevail if the case continued.

### 2. Fairness and Equity

The court next considers whether the proposed settlement is a fair and equitable one. "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). To determine if the proposed settlement is fair and equitable, courts regularly examine the factors that apply to proposed class action settlements under Rule 23(e). *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014); *Tommey*, 2015 WL 1623025, at *2. Those factors include: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Barbosa*, 2014 WL 5099423, at *7; *Tommey*, 2015 WL 1623025, at *2. "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Gambrell*, 2012 WL 5306273, at *2 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

Plaintiff has demonstrated that the proposed settlement satisfies each factor listed above. First, the settlement was fairly and honestly negotiated. The parties negotiated their settlement agreement through experienced counsel and reached their agreement after arms-length negotiations. Second, it appears that the case involves serious questions of law and fact, and those claims place the ultimate outcome of the litigation in doubt. The parties dispute whether defendants' reimbursement policy reasonably compensated delivery drivers for their vehicle

9

expenses. Defendants argue that it did, and thus they have not violated the FLSA. In contrast, plaintiff contends that defendants did not pay its delivery drivers minimum wage. The parties' conflicting positions pose serious questions of law and fact. Third, the Amended Agreement provides the value of an immediate recovery to the opt-in plaintiffs now and outweighs the mere possibility of future relief after protracted and expensive litigation. And, fourth, the parties assert that the settlement is fair, reasonable, and adequate. The court finds that all four factors favor approval of the Amended Agreement as fair and reasonable.

Although these factors may demonstrate that a settlement agreement is fair and reasonable, they are not determinative. *See McCaffrey*, 2011 WL 32436, at *5 (explaining that the Rule 23(e) factors "provide a general framework for the Court's determination whether an FLSA settlement is fair, but they are not determinative"). In addition to the four factors listed above, the court also must determine "that the proposed settlement is fair and equitable to all parties in light of the history and policy of the FLSA." *Gambrell*, 2012 WL 5306273, at *5.

In its previous Order denying plaintiff's first Motion seeking approval of the collective action settlement, the court was unable to conclude that the parties' original settlement agreement was fair and reasonable for two reasons. First, the court rejected the original settlement agreement because it contained confidentiality provisions. Our court consistently has held that such provisions in an FLSA settlement agreement "contravene[ ] the legislative purpose of the FLSA and undermine[ ] the Department of Labor's regulatory effort to notify employees of their FLSA rights." *Barbosa*, 2014 WL 5099423, at *7 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)). The parties' Amended Agreement removes the confidentiality provisions. The parties thus have alleviated the court's concerns on this point.

Second, the court was unable to approve the original settlement agreement's proposed $2,000 service award because plaintiff had failed to provide sufficient information to support the proposed amount. In his renewed Motion, plaintiff provides the requisite information for the court to determine that the $2,000 proposed service award is reasonable. Namely, plaintiff estimates that he devoted about 25 hours to work on this lawsuit. That work included seeking and retaining plaintiff's counsel, filing the lawsuit, communicating with counsel on many occasions about the status and progress of the lawsuit, providing factual information to counsel necessary for the lawsuit's prosecution, and participating in the settlement negotiations. Our court has concluded that similar service awards are fair and reasonable compensation to a plaintiff for the time spent prosecuting a lawsuit on behalf of a plaintiff class. *See*, *e.g.*, *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) (reducing the requested service awards to the four named plaintiffs from $15,000 to $5,000 each, which adequately compensated each plaintiff for the 80 hours of time, on average, that each devoted to the lawsuit). The court finds that the service award contained in the Amended Agreement is fair and reasonable.

With the changes to the parties' Amended Agreement and the additional information provided in the renewed Motion, the court concludes that the Amended Agreement is fair and equitable to all parties. The court thus approves the proposed FLSA collective action settlement.

### C. Attorney's Fees and Costs

The FLSA requires the parties to a settlement agreement to include an award of reasonable attorney's fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2. Though the court has discretion to determine the amount and

reasonableness of the fee, the FLSA fee award nevertheless is mandatory. *Barbosa*, 2015 WL 4920292, at *4.

Plaintiff seeks an award of $44,000 (representing one-third of the common fund) to plaintiff's counsel as payment for all reasonable attorney's fees, costs, and expenses. Plaintiff also seeks $2,587.13 to compensate plaintiff's counsel for out-of-pocket costs incurred in the litigation. The court address each requested award separately, below.

### 1.      Attorney's Fees

The requested attorney's fees award represents one-third of the common fund. A percentage fee from a common fund award "must be reasonable and . . . the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award." *Barbosa*, 2015 WL 4920292, at *7 (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988)).

To determine the fee award's reasonableness, "[t]he Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id.* (first citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); then citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). This method calls for a court to calculate a lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Solis*, 2014 WL 4357486, at *4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citation omitted)); *see also Hobbs v. Tandem Envtl. Sols., Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012). The hybrid approach also requires consideration of the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Those factors are: (1) time and labor required; (2) novelty and

difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Barbosa*, 2015 WL 4920292, at *8 (first citing *Rosenbaum*, 64 F.3d at 1445; then citing *Johnson*, 488 F.2d at 717–19). The court analyzes these factors below.

### a. Factor 1: Time and Labor Required

Plaintiff's counsel represents that they have spent about 134 hours working on this matter. The tasks involved in this case included investigating the facts, reviewing documents produced by collective action members and defendants, analyzing defendants' payroll and delivery data, communicating with the opt-in plaintiffs, negotiating the settlement and court approval papers, creating dynamic computerized damage models, and devising a formula for allocation of the common fund for the opt-in plaintiffs. The court finds that this litigation required the labor described above and justifies the time recorded.

Rick Paul and Jack McInnes billed a majority of the hours devoted to the matter. Mr. Paul is the managing partner of Paul McInnes LLP. The firm has extensive experience in wage and hour litigation, with Mr. Paul serving as lead counsel in many wage and hour lawsuits filed in federal and state courts throughout the country. Another attorney, Mark Potashnick, recorded the remaining attorney hours to the matter. Mr. Potashnick has 23 years' experience representing clients in labor, employment, and employee benefits cases. For the past seven years, Mr. Potashnick's practice has concentrated on class and collective action claims. He successfully has

prosecuted many wage and hour cases in federal and state courts throughout the United States. Finally, three paralegals billed about 35 hours of the total amount recorded to the matter.

Mr. Paul's standard hourly rate is $600; Mr. McInnes' standard hourly rate is $400; and Mr. Potashnick's standard hourly rate is $450. The court finds that these rates, though on the high end of the approvable range, are reasonable in light of all the risks and others factors present in this case. These rates are also similar to other hourly rates approved by our court in FLSA cases for counsel with similar experience. *See*, *e.g.*, *Barbosa*, 2015 WL 4920292, at *10 (finding hourly rates ranging from $180 to $425 reasonable, depending on each attorney's level of experience); *In re Bank of Am. Wage & Hour Emp't Litig.*, No. 10-MD-2138-JWL, 2013 WL 6670602, at *3 (D. Kan. Dec. 18, 2013) (calculating a lodestar with a blended hourly rate of $488); *Bruner v. Sprint/United Mgmt. Co.*, Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV, 2009 WL 2058762, at *10 (D. Kan. July 14, 2009) (awarding plaintiffs' counsel a "generous" fee award in an FLSA settlement using an hourly rate of $590.91).

Plaintiff's counsel also has submitted an affidavit from another local attorney with extensive experience in wage and hour cases, but who was not involved in this case. Doc. 72-3. This attorney is, however, familiar with the rates charged by counsel in wage and hour cases, and he states that the hourly rates submitted by plaintiff's counsel in this case are on the low end of the spectrum for lawyers of comparable skill and experience. *Id.* at 3. This information provides additional support for the reasonableness of plaintiff's counsels' rates.

The three paralegals billed time to this matter at their standard hourly rates of $130, $110, and $100. The court concludes that these paralegal rates are reasonable. *See*, *e.g.*, *Mathiason v. Aquinas Home Health Care, Inc.*, __ F. Supp. 3d __, 2016 WL 2848921, at *7 (D. Kan. May 16, 2016) (Lungstrum, J.) (concluding that a $125 hourly rate for paralegal time was reasonable).

Applying these rates to the hours recorded makes the lodestar $45,996. The amount that plaintiff's counsel asks the court to approve—$44,000—is slightly less than the lodestar. The court also recognizes that counsel will incur additional time to complete the settlement and conclude the litigation—time that counsel has not yet recorded and thus is not reflected in the lodestar. The lodestar will continue to increase as counsel performs this additional work, and it will exceed the requested award by an even greater amount. The court concludes that the requested amount is consistent with the time and labor required in this matter. This first factor thus favors approval of the award.

### b. Factors 2 and 3: Novelty and Difficulty of the Questions Presented and Skill Required to Perform the Legal Service Properly

Plaintiff's counsel asserts that wage and hour cases, such as this one, present significant and novel challenges requiring considerable skill and experience to litigate them. Even if this is true, the hourly rates approved above reflect the skill required to handle the questions presented in this lawsuit. The court already has taken into account these two factors, above. The court thus finds that these two factors are neutral in its analysis.

### c. Factor 4: Preclusion of Other Employment

Plaintiff's counsel states that they worked on this matter for a total of about 134 hours—time that they could have devoted to other matters. Plaintiff's counsel also explains that they worked on this case with the understanding that they might not recover anything because it was a contingency matter. The court agrees that the time and effort spent litigating the case demonstrates that the lawsuit precluded plaintiff's counsel from working on other matters. This factor thus favors approval of the fee award.

### d. Factor 5:  Customary Fee

"While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically a percentage of the fund." *Barbosa*, 2015 WL 4920292, at *11 (first citing *Rosenbaum*, 64 F.3d at 1445; then citing *Gottlieb*, 43 F.3d at 482).  Our court "typically applie[s] the percentage of the fund method when awarding fees in common fund, FLSA collective actions." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7).  "Fee awards in these cases have ranged from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." *Id.* (citing *Bruner*, 2009 WL 2058762, at *7).

The fee award requested here amounts to one-third of the common fund.  This percentage falls within "the customary percentage of the fund approved by this Court and also within the customary fee range which counsel appears to charge in similar matters." *Barbosa*, 2015 WL 4920292, at *11 (concluding that a fee request that was 33% of the total settlement amount came within the range approved by our court and charged by counsel in other matters); *see also Bruner*, 2009 WL 2058762, at *8 (noting the same about a requested fee award that was 33% of the common fund).  This factor also favors approval of the requested fee award.

### e. Factor 6:  Whether the Fee Is Fixed or Contingent

As recited above, plaintiff agreed to pay counsel on a contingency basis.  Plaintiff's counsel asserts that the requested award is somewhat less than its customary continent fee in wage and hour cases which is generally between 35 to 40% of any recovery.  Plaintiff's counsel also states that they contracted with plaintiff and the pre-conditional certification opt-in plaintiffs for an attorney's fee award of 35% of any recovery.  The requested award is also less than that contracted amount.  But our court has recognized that the courts, not the parties, must determine

the fees in FLSA actions. *See Bruner*, 2009 WL 2058762, at *8. A contingency fee agreement is only one of many relevant factors, and it provides no conclusive evidence of the reasonableness of a fee award. *Id.* This factor thus is neutral.

### f.  Factor 7:  Time Limitations

Plaintiff's counsel provides no information about any time limitations involved here. The court finds that any time limitations imposed in this case are inherent in any engagement and not specific to an FLSA action like this one. The court finds this factor a neutral one.

### g.  Factor 8:  Amount Involved and Results Obtained

Plaintiff's counsel obtained a favorable result. Each opt-in plaintiff will receive a monetary settlement from the common fund computed on a *pro rata* basis using an equitable formula based on the number of delivery miles driven by each opt-in plaintiff. Defendants continue to contest their liability, and so the ultimate outcome of this litigation (if it had not settled) remains in doubt. The settlement avoids the uncertainty and rigors of trial and produces a favorable result for the opt-in plaintiffs. This factor favors approval of the fee award.

### h.  Factor 9:  Attorneys' Experience, Reputation, and Ability

The court already has discussed the experience, reputation, and ability of the attorneys above. As noted, plaintiff's counsel has experience litigating employment cases, particularly wage and hour cases. The skill and experience of counsel is reflected in the hourly rates that the court approved above to calculate the lodestar. The court already has accounted for this factor in the lodestar. This factor thus is neutral one.

### i.  Factor 10:  Undesirability of the Case

Plaintiff's counsel asserts that the contingency nature of the case posed a risk to the attorneys and thus made it an undesirable case to prosecute. The court already has considered

17

this factor above and refuses to find the case undesirable simply because it involved a contingency fee agreement and the risk that comes with such an arrangement. This factor is neutral.

### j. Factor 11: Nature and Length of the Professional Relationship

Plaintiff's counsel presents no evidence about the nature and length of the professional relationship. As our court has explained, "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Barbosa*, 2015 WL 4920292, at *12 (citing *Bruner*, 2009 WL 2058762, at *9 (further citation omitted)). The court finds this factor, which might matter in some cases, immaterial to its analysis here.

### k. Factor 12: Awards in Similar Cases

Plaintiff's counsel asserts that the requested fee award is consistent with awards approved in similar cases. As noted above, the requested fee award here represents one-third of the common fund. Historically, our court has approved fee awards in FLSA cases ranging from "four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." *Id.* at *11 (citing *Bruner*, 2009 WL 2058762, at *7). The percentage of the fund that counsel seeks here as a fee award falls within the range our court has approved in other FLSA cases. *See*, *e.g.*, *id.* (concluding that a fee request that was 33% of the total settlement amount came within the range approved by our court and charged by counsel in other matters); *see also Bruner*, 2009 WL 2058762, at *8 (noting the same about a requested fee award, which was 33% of the common fund).

In sum, based on its analysis of the lodestar and *Johnson* factors, the court concludes that the attorney's fees requested are fair and reasonable. The court thus grants plaintiff's request for approval of the proposed attorney's fees award.

### 2. Costs

The parties' Amended Agreement provides that plaintiff's counsel may recover their out-of-pocket costs incurred in the litigation in an amount not to exceed $3,000. Plaintiff's counsel asserts that it will incur about $2,587.13 in out-of-pocket expenses, including the costs to mail the settlement checks after the court approves settlement. This amount falls within the $3,000 cap for recoverable costs that the parties established in the Amended Agreement. Plaintiff's counsel represents that these expenses are the same kind of expenses that counsel typically charges to hourly clients and for which counsel has sought reimbursement in similar cases. Plaintiff's counsel also represents that the expenses are charged at cost without any mark-up. The court finds these costs reasonable.

## IV. Conclusion

For reasons explained above, the court grants plaintiff's Renewed Motion to Approve Collective Action Settlement (Doc. 71) and Amended Application for Fees and Costs (Doc. 72). The court finds that the proposed settlement resolves a bona fide dispute and is fair and equitable to all parties. The court approves the parties' Amended Agreement establishing a common fund of $132,000 and awarding: (1) $2,000 as a service award to the named plaintiff; (2) $44,000 (representing one-third of the common fund) to plaintiff's counsel as payment for all reasonable attorney's fees, costs, and expenses; (3) $2,587.13 to plaintiff's counsel for out-of-pocket costs incurred in the litigation; and (4) the remaining amount to the 137 collective action members

distributed on a *pro rata* basis using an equitable formula based on the number of delivery miles driven by each opt-in plaintiff.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Renewed Motion to Approve Collective Action Settlement (Doc. 71) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff's Amended Application for Fees and Costs (Doc. 72) is granted.

**IT IS SO ORDERED.**

Dated this 3rd day of January, 2017, at Topeka, Kansas.

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**